UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Epic Systems Corporation,

                                                            Case No. 15-CV-179

            Plaintiff,

vs.

Attachmate Corporation,

            Defendant.

---

## DECLARATORY JUDGMENT COMPLAINT

---

Plaintiff, Epic Systems Corporation ("Epic"), brings this complaint ("Complaint") against Defendant Attachmate Corporation ("Attachmate") and alleges as follows:

### THE PARTIES

1. Plaintiff, Epic, is a Wisconsin corporation existing under the laws of the State of Wisconsin with its principal place of business located at 1979 Milky Way, Verona, Wisconsin 53593.

2. Upon information and belief, Defendant, Attachmate, is a corporation existing under the laws of the State of Washington, with its principal place of business located at 705 5th Avenue South, Suite 1100, Seattle, Washington 98104. Attachmate's registered agent is CT Corporation System, 505 Union Avenue Southeast, Suite 120, Olympia, Washington 98501.

### JURISDICTION AND VENUE

3. This declaratory judgment action arises under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

4. This Court has jurisdiction over the subject matter of this declaratory judgment action because an actual controversy of real and immediate nature exists, pursuant to 28 U.S.C. § 2201 and 2202, related to the parties' rights and legal relations under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

5. The Court has supplemental jurisdiction over the software licensing dispute discussed in this Complaint because the claims are so related to the federal Copyright claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. Additionally, this case is between diverse parties for a dispute that exceeds $75,000, excluding interest and costs. Epic is a citizen of Wisconsin and Attachmate is a citizen of Washington.

7. The Court has personal jurisdiction over Attachmate. Upon information and belief, Attachmate advertises, distributes and licenses products and provides services to residents of the State of Wisconsin and throughout this judicial district. Thus, Attachmate is subject to this Court's specific and general personal jurisdiction pursuant to due process and the Wisconsin long arm statute, resulting from Attachmate's substantial business contacts in this forum. Further, at least a portion of the dispute alleged in this Complaint occurred in the State of Wisconsin and in this judicial district, and upon information and belief Attachmate regularly conducts and solicits business, engages in other persistent courses of conduct and derives substantial revenue from goods licensed to individuals in Wisconsin and in this judicial district.

8. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claims in this Complaint occurred in this judicial district and Attachmate is subject to personal jurisdiction in this judicial district.

## FACTS GIVING RISE TO THE ACTION

9. Founded in 1979, Epic is a private company that makes software for mid-size and large medical groups, hospitals and integrated healthcare organizations – working with customers that include community hospitals, academic facilities, children's organizations, safety net providers and multi-hospital systems.

10. Epic develops and supports all its software applications in-house and has more than 7,000 employees based in Verona, Wisconsin.

11. Epic consistently earns high ratings for customer satisfaction and promises kept.

12. As an innovative technology company, Epic is committed to respecting intellectual property rights in software.

13. More than ten (10) years ago, Epic began purchasing licenses for an Attachmate software product called Reflection. Reflection is a "terminal emulation" software product, which allows computer users on Windows-based devices to connect to non-Windows-based operating systems.

14. Initially, Epic licensed the Reflection product only for use on employee workstations and workstations in Epic's training center. Epic has purchased more than 10,900 individual workstation licenses from Attachmate for that purpose.

15. In 2011, Epic was looking for software to allow remote connections to its environment, so that Epic could provide training to its customers remotely after those customers had been onsite for training. Epic informed Attachmate of its need for terminal emulation software to allow remote connections by its customers. Based on Epic's needs, Attachmate recommended concurrent Reflection licenses. Based on that recommendation, Epic purchased

200 concurrent licenses, which would allow up to 200 users to connect to Epic's environment at any given time.

16. In multiple communications between Epic and Attachmate from 2011, Epic confirmed to Attachmate that Epic was using and would continue to use the concurrent licenses to the Reflection software to facilitate the remote training of Epic's customers.

17. Epic agreed to monitor the actual number of Epic's customers concurrently using Reflection to determine whether Epic would need additional licenses, and Epic did so. As a result of that monitoring, Epic discovered that the number of concurrent users had come close to, but had not exceeded, the initial maximum of 200 allowed concurrent users. Accordingly, in late 2011, Epic purchased another 200 concurrent licenses, bringing the total to 400, to ensure that Epic had sufficient licenses to cover all users.

18. On or about November 6, 2014, Epic received an audit request from Attachmate.

19. Epic cooperated with the Attachmate's audit request and an on-site audit was conducted December 17 through 19, 2014.

20. On or about February 17, 2015, Attachmate communicated with Epic its conclusion from the audit that there was a compliance issue regarding the use of the Reflection software. Attachmate provided Epic with a comparison table which Attachmate alleged compares "installations" of the various types and versions of the Reflection software to the licenses owned by Epic and purports to show a significant license shortfall.

21. Upon information and belief, Attachmate arrived at the number of licenses it contends Epic needed by simply counting the number of user accounts that had the ability to access Reflection, regardless of whether they had actually accessed the software.

22. Epic has explained to Attachmate that Epic's alleged shortfall number represents those users that would be covered by the 400 concurrent licenses when those users actually connect to Epic's environment through Reflection, which is precisely the use for which Attachmate sold the concurrent licenses to Epic.

23. Attachmate has a history of assuming circumstances concerning an alleged over-deployment or particular use of its software products so as to maximize its claim for license fees and interest from its customers in an effort to unjustly reap a windfall from its customers.

24. Consistent with this history, Attachmate demanded that Epic purchase licenses for all "installations" it deemed non-compliant under its interpretation of its End User License Agreement ("EULA").

25. Attachmate demanded from Epic that it pay remedial pricing for the alleged license shortfall within thirty (30) days from the date of its demand.

26. Although Epic has attempted to work cooperatively with Attachmate to investigate and resolve any alleged discrepancy between the software products licensed and used, Attachmate refuses to work cooperatively with Epic to resolve any issues raised by the audit in a fair and equitable manner under the circumstances.

27. Attachmate has a proven record of aggressively pursuing its customers, including by alleging copyright infringement and breach of contract, after conducting license verifications or audits of customers' use of Attachmate software products. Attachmate's predatory practices have resulted in the filing of at least twenty-eight, similar federal lawsuits, including: (1) *University of Kansas Hospital Authority v. Attachmate Corp.*, Case No. 2:15-cv-02655 (D. Kan. 2015); (2) *Sykes Enterprise Inc. v. Attachmate Corp.*, Case No. 8:15-cv-369 (M.D. Fla. 2015); (3) *Medical College of Wisconsin, Inc. v. Attachmate Corp.*, Case No. 15-C-0151 (E.D. Wis.

2015); (4) *Pac. Life Ins. Co. v. Attachmate Corp.*, Case No. 8:14-CV-1265 (C.D. Cal. 2014); (5) *Saks Inc. v. Attachmate Corp.*, Case No. 14-CV-4902 (S.D.N.Y. 2014); (6) *Union Hosp., Inc. v. Attachmate Corp.*, Case No. 2:14-CV-45 (S.D. Ind. 2014); (7) *Waddell & Reed, Inc. & W&R Corporate LLC v. Attachmate Corp.*, Case No. 2:14-CV-2202 (D. Kan. 2014); (8) *Entergy Servs., Inc. v. The Attachmate Grp.*, Case No. 13-CV-5297 (E.D. La. 2013); (9) *Wellmont Health Sys. v. Attachmate Corp.*, Case No. 2:13-CV-35 (E.D. Tenn. 2014); (10) *Tri-Health, Inc. v. Attachmate Corp.*, Case No. 1:12-CV-901 (S.D. Ohio 2012); (11) *Covance Inc. v. Attachmate Corp.*, Case No. 3:12-CV-4088 (D.N.J. 2012); (12) *Wellspan Health v. Attachmate Corp.*, Case No. 1:12-CV-109 (M.D. Pa. 2012); (13) *Univ. of Rochester v. Attachmate Corp.*, Case No. 6:12-CV-6019 (W.D.N.Y. 2012); (14) *Nw. Cmty. Hosp. v. Attachmate Corp.*, 1:11-CV-6916 (N.D. Ill. 2011); (15) *Franciscan Missionaries of Our Lady Health Sys., Inc., et al. v. Attachmate Corp.*, Case No. 3:11-CV-582 (M.D. La. 2011); (16) *Polo Ralph Lauren, et al. v. Attachmate Corp.*, Case No. 1:11-CV-1890 (S.D.N.Y. 2011); (17) *SuperValu v. Attachmate Corp.*, Case No. 07-CV-3164 (D. Minn. 2007); (18) *Attachmate Corp. v. Celcom Axiata Berhad*, Case No. 2:10-CV-526 (W.D. Wash. 2010); (19) *Attachmate Corp. v. Public Health Trust of Miami-Dade Cnty. Fla.*, Case No. 2:09-CV-1180 (W.D. Wash. 2009); (20) *Attachmate Corp. v. Health Net, Inc.*, Case No. 2:09-CV-1161 (W.D. Wash. 2009); (21) *Attachmate Corp. v. Tarmac Ltd.*, Case No. 2:08-CV-1370 (W.D. Wash. 2008); (22) *Attachmate Corp. v. Sentry Ins.*, Case No. 2:08-CV-103 (W.D. Wash. 2008); (23) *Attachmate Corp. v. Jeld-Wen Inc.*, Case No. 2:08-CV-897 (W.D. Wash. 2008); (24) *Attachmate Corp. v. United Techs. Corp.*, Case No. 2:08-CV-799 (W.D. Wash. 2008);(25) *Attachmate Corp. v. Windstream Commc'n Inc.*, Case No. 2:08-CV-190 (W.D. Wash. 2008); (26) *Attachmate Corp. v. Dell Inc.*, Case No. 2:07-CV-283 (W.D. Wash. 2007);

(27) *Attachmate Corp. v. Juniper Networks, Inc.*, Case No. 2:07-CV-802 (W.D. Wash. 2007);

(28) *Attachmate Corp. v. Carnival Corp.*, Case No. 2:07-CV-1730 (W.D. Wash. 2007).

28. During the course of the parties' communications, Attachmate has conveyed that it is prepared to enforce its alleged rights through litigation for breach of contract and/or copyright infringement.

29. Attachmate has insisted that Epic owes Attachmate significant license fees and interest based on its view of the alleged non-compliant installations of the Reflection software products and has been unwilling to retreat or negotiate in good faith from its position.

## COUNT I

### (Declaratory Judgment of Non-Infringement of Copyright)

30. Epic realleges Paragraphs 1 through 29 as if fully set forth herein.

31. Any claims for copyright infringement brought by Attachmate are barred, as Epic is licensed to use the works (Reflection software products) at issue.

32. Epic's actions do not constitute copyright infringement to the extent they are allowed under 17 U.S.C. § 117(a).

33. Epic's actions do not constitute copyright infringement to the extent they are allowed as fair use under 17 U.S.C. § 107.

34. Epic therefore seeks a declaration that Epic is not liable for copyright infringement of Attachmate's software products.

## COUNT II

### (Declaratory Judgment on Breach of Contract Claims)

35. Epic realleges Paragraphs 1 through 34 as if fully set forth herein.

36. Attachmate's EULA was drafted by Attachmate without the availability for Epic to negotiate the terms of the EULA.

37. Attachmate, on information and belief, offers it EULA only on a "take or leave it" basis and on that basis it is a contract of adhesion.

38. Attachmate contends that Epic breached the EULA with Attachmate.

39. Epic denies that any of its actions constitute a breach of Attachmate's EULA.

40. Epic therefore seeks a declaration that Epic did not breach the terms of the EULA or any other Attachmate contract.

## COUNT III

### (Waiver, Estoppel, Laches, Acquiescence, Unclean Hands)

41. Epic realleges Paragraphs 1 through 40 as if fully set forth herein.

42. With full knowledge of the circumstances producing Attachmate's purported right to relief, with the intent to relinquish that right, and/or with continuing indifference in the exercise of that right, whether through acts of omission and/or commission – for example, by failing to accurately advise on the use of its Reflection software products for the possibility of customer over-development – Attachmate waived its rights to seek relief against Epic.

43. Attachmate unreasonably and inexcusably delayed taking action on its purported claims for copyright infringement and/or breach of contract – for example, by failing to monitor and accurately advise on the use of its software for the possibility of customer over-deployment. Epic relied on Attachmate's failure to take timely action on its alleged claims, to Epic's prejudice and detriment.

44. Expressly or impliedly, by act or deed, Attachmate led Epic to believe that Epic's use of the Reflection software products was approved by Attachmate and/or consistent with the

license, and that Attachmate would not take action on its purported claims for copyright infringement and/or breach of contract. Epic relied on Attachmate's express or implied acts and/or deeds, and its failure to take timely action on its alleged claims, to Epic's prejudice and detriment.

45. Any claims brought by Attachmate for copyright infringement and/or breach of contract are therefore barred by waiver, estoppel, laches, acquiescence and/or unclean hands.

## COUNT IV

### (Failure to Mitigate)

46. Epic realleges Paragraphs 1 through 45 as if fully set forth herein.

47. Attachmate had or should have had knowledge of Epic's use of the Reflection software products in a manner that might give rise to the assertion by Attachmate that Epic's use constituted an over-deployment or improper deployment of Attachmate's Reflection software.

48. Upon information and belief, had Attachmate acted sooner, its purported damages would have been averted.

49. Through acts of omission and/or commission – for example, by failing to communicate with Reflection software product customers its expectations concerning how the software products could be used – Attachmate failed to take timely actions to mitigate the alleged damages it now seeks from Epic.

## COUNT V

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

50. Epic realleges Paragraphs 1 through 49 as if fully set forth herein.

51. There is a general duty of good faith and fair dealing imposed in the performance of every contract. It is a requirement that a party to a contract exercises its discretion reasonably

and with proper motive when that party is vested with the exercise of discretion under a contract, based upon the reasonable expectations of the parties. A party's performance under a contract may breach that implied covenant even though its performance does not violate an express contract term. Attachmate has breached its obligations of good faith and fair dealing to Epic.

52. By its unfair and unreasonable claims for payment, Attachmate seeks to evade the spirit of the bargain(s) it claims to have made with Epic. During the course of the parties' relationship, Attachmate has rendered imperfect performance, abused its power to specify contract terms, and has made Epic's payment obligations unreasonably vague in an effort to secure a windfall for itself.

53. When Epic brought to Attachmate's attention its deficient performance due to failure to provide the bargained for software product, Attachmate failed to remedy the problem or account for its deficient performance relating to the audit.

54. For Attachmate's breach of its implied covenant of good faith and fair dealing, it should be required to return to Epic all payments made for license fees for duplicative and/or unnecessary software products as well as all costs incurred by Epic in connection with responding to Attachmate's audit.

## **COUNT VI**
### **(Copyright Misuse)**

55. Epic realleges Paragraphs 1 through 54 as if fully set forth herein.

56. Through Attachmate's improper assertion of its EULA against customers, including Epic, Attachmate is trying to expand its copyright monopoly beyond the grant of its exclusive rights under the Copyright Act, 17 U.S.C. § 106.

57.     Any claims for copyright infringement brought by Attachmate are barred due to copyright misuse.

## COUNT VII

### (Deceptive or Unfair Trade Practices)

58.     Epic realleges Paragraphs 1 through 57 as if fully set forth herein.

59.     Epic purchased more than 10,900 licenses for Reflection use by its employees and Epic customers in its training center.

60.     Additionally, Epic purchased 400 concurrent licenses to Reflection to cover all concurrent connections by Epic's customers from extranet accounts.

61.     Despite Epic's demonstration to Attachmate that its use of the Reflection software products was consistent with the prior communications between the parties and the total number of licenses purchased by Epic, Attachmate represented that Epic over-deployed the Reflection software products.

62.     Attachmate made untrue, deceptive, or misleading representations in an attempt to force Epic to purchase additional licenses.

63.     Attachmate's methods of attempting to force Epic to purchase additional licenses constitutes an unfair trade practice.

64.     Attachmate has therefore violated the Wisconsin Statutes, including section 100.18.

## COUNT VIII

### (Statute of Limitations)

65.     Epic realleges Paragraphs 1 through 64 as if fully set forth herein.

66. Attachmate's copyright infringement claims are barred to the extent they are asserted in violation of the three-year statute of limitations of the Copyright Act, 17 U.S.C. § 507(b).

67. Attachmate's breach of contract claims are barred to the extent they are asserted in violation of any applicable statute of limitations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Epic, prays this Court for an order:

A. Declaring that Epic is not liable to Attachmate for copyright infringement, as Epic's use of Attachmate's software was licensed;

B. Declaring that Epic has not breached any contract with Attachmate;

C. Declaring that Attachmate's copyright infringement and breach of contract claims are barred by estoppel, waiver, laches, acquiescence, and unclean hands;

D. Declaring that Attachmate's copyright infringement and breach of contract claims are barred by the applicable statute(s) of limitations;

E. Declaring that, if Attachmate's claims are allowed to proceed, any damages for Attachmate's copyright or breach of contract claims be reduced due to Attachmate's failure to mitigate its alleged damages;

F. Declaring that Attachmate's copyright infringement claims are barred due to copyright misuse;

G. Awarding Epic damages for Attachmate's breach of the implied covenant of good faith and fair dealing;

H. Awarding Epic damages for Attachmate's unfair and deceptive trade practices, including double damages for willful conduct;

- 13 -

I. Awarding Epic the attorney fees, costs, and expenses that it incurs prosecuting this action; and

J. Providing for any other and further relief that is just and proper.

Dated this 19th day of March, 2015.

**MICHAEL BEST & FRIEDRICH LLP**

By: *s/ S. Edward Sarskas*
S. Edward Sarskas, SBN 1025534
Patricia L. Jenness, SBN 1082658
100 East Wisconsin Avenue, Suite 3300
Milwaukee, WI 53202
Phone:  414.271.6560
Fax:  414.277-0656
sesarskas@michaelbest.com
pljenness@michaelbest.com

Albert Bianchi, Jr.
Michael Best & Friedrich LLP
1 S Pinckney Street #700
P.O. Box 1806
Madison, WI 53701-1806
Phone:  (608) 283-4425
Fax:  (608) 283-2275
abianchi@michaelbest.com

Attorneys for
Epic Systems Corporation

031105-9074\16888608.1