IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EPIC SYSTEMS CORPORATION,                              OPINION AND ORDER

                Plaintiff,                              15-cv-179-bbc

      v.

ATTACHMATE CORPORATION,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Epic Systems Corporation filed this civil action against defendant Attachment Corporation after defendant accused plaintiff of facilitating wide-spread unauthorized use of certain Attachmate software. Plaintiff is seeking a declaration that its use of the Attachmate software did not violate either defendant's copyrights or the parties' licensing agreements. Plaintiff also included claims that defendant's sales practices violated the Wisconsin Deceptive Trade Practices Act and that defendant's audit and subsequent accusations of unauthorized use violated the implied duty of good faith and fair dealing under Washington law. Defendant responded by filing counterclaims for copyright infringement and breach of contract.

On June 21, 2016, I entered an order denying defendant's's motion for partial summary judgment on plaintiff's claims and granting in part and denying in part plaintiff's motion for summary judgment on defendant's claims. In that order, I concluded that there was a genuine issue of material fact with respect to whether plaintiff breached the parties'

1

licensing agreement by allowing its remote trainees to access defendant's RUO v. 14.0 program without a license and a genuine issue of material fact with respect to whether plaintiff infringed defendant's copyrights.  The case is set for trial on July 25, 2016.

Now defendant has filed a motion to exclude plaintiff's damages expert, Richard Bero, from testifying at trial.  Defendant has also filed a motion for leave to file a reply brief in support of its motion to exclude, which I am granting on the ground that it is not opposed by plaintiff. Defendant argues that Bero's opinions are irrelevant in light of the legal standards governing how damages must be calculated in this case, not grounded in credible facts or evidence and constitute impermissible legal conclusions.  After reviewing Bero's report and the parties' briefs, I conclude that Bero's opinions are admissible.

OPINION

A. Legal Standard Governing Damages

In order to determine whether Bero's damages opinions are admissible and relevant, I must first identify the correct standard for calculating damages in this case, an issue which neither party has squarely addressed.  The parties refer to a variety of standards throughout their briefs, but most of these references are far too vague to be useful.  For example, defendant contends that it is entitled to the "benefit of the bargain" it entered into with plaintiff, but it fails to explain how, from a practical standpoint, the court can determine what the expected benefit was in this particular context.  Moreover, to the extent the various standards cited by the parties are different from one another, the parties fail to provide the

2

court any guidance about why one standard is better than the others identified. After reviewing the parties' arguments as well as the case law addressing damages calculations in similar contexts, I conclude that the best way to calculate the damages is on the basis of the estimated "fair market value" of plaintiff's unauthorized use.

Calculating damages based on "fair market value" is the preferred approach taken in cases involving the unauthorized use of copyrights, including software protected by copyrights. McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 566 (7th Cir. 2003) (applying fair market value method in case involving unauthorized use of software protected by copyright); Deltak, Inc. v. Advanced System, Inc., 767 F.2d 357, 364 (7th Cir. 1985) (applying fair market value method in copyright case). As the Court of Appeals for the Second Circuit has put it, awarding damages based on fair market value is appropriate when there is no evidence of "lost sales, lost opportunities to license [to third-parties], or diminution in value of the copyright." On Davis v. Gap, 246 F.3d 152 (2d Cir. 2001).

In calculating the fair market value of an unauthorized use, courts will attempt to determine the price to which a willing buyer and a willing seller would have agreed had they engaged in an ex-ante "hypothetical negotiation" for the specific type of unlicensed use at issue. McRoberts Software, Inc., 329 F.3d at 566; Jarvis v. K2 Inc., 486 F.3d 526, 533-34 (9th Cir. 2007) ("[I]n situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work."); Gaylord v. United States, 777 F.3d 1363, 1368 (Fed. Cir. 2015) ("To calculate fair market value, a

3

court deciding a copyright case may use a tool familiar from patent law, without necessarily following every aspect of patent law's use of that tool.  It may hypothesize a negotiation between the parties before the infringement occurred and determine the reasonable license fee on which a willing buyer and willing seller would have agreed for the use taken by the infringer." (internal quotations and citations omitted)).  Determining the fair market value of a product is a "fact-dependent inquiry" and "the trial court must consider *all* evidence relevant to a hypothetical negotiation[.]"  Gaylord v. United States, 678 F.3d 1339, 1344 (Fed. Cir. 2012).  Some of the factors commonly considered by the courts include "past arms-length licensing practices by the copyright owner or the infringer for similar uses and 'benchmark' licenses by others in the industry may be useful." Gaylord, 777 F.3d at 1368. Moreover, "the court is not constrained to accept particular practices of the parties on either side—either to allow owners to charge what they would like to have charged if unconstrained by reality or to shield infringers from paying fair market value for what they took."  Id. (internal citations and quotations omitted).

Although the fair market value method has typically been used in the intellectual property context, it is also an appropriate method for calculating damages attributable to plaintiff's alleged breach of contract. At defendant points out, Washington courts have ascribed to the traditional method of calculating damages in contract cases, which involves looking to the injured party's expectation interest.  Ford v. Trendwest Resorts, Inc., 146 Wash. 2d 146, 155, 43 P.3d 1223, 1227 (2002). Awarding damages based on the fair market value of Epic's unlicensed use protects Attachmate's expectation interest because it

4

is an approximation of what Epic would have paid to license RUO v. 14.0.

## B. Bero's Opinions

Having identified the proper standard for calculating damages in this case, I can now address defendant's objections to Bero's testimony regarding damages. Defendant raises four issues with respect to Bero's opinions. First, Bero should be precluded from offering his opinion that defendant did not suffer any damages at all ("Opinion No. 1"). Second, Bero's damages opinion should be deemed inadmissible to the extent that it is based on an assumption that plaintiff would have been able to purchase concurrent licenses during an ex-ante hypothetical negotiation. Third, Bero's opinion should be excluded because it relies on "cherry-picked" data. Finally, Bero's "opinions" are actually just inadmissible legal arguments. I am rejecting each of these arguments.

### 1. Bero's "zero damages" opinion

Defendant's argument with respect to Bero's "zero damages" opinion oversimplifies Bero's testimony. Although I am inclined to disagree with Bero's ultimate conclusion that defendant suffered no damages as a result of plaintiff's unauthorized use of RUO v. 14.0, I believe that Bero's hypothetical negotiation and the data points he considered in reaching this conclusion are relevant to the task of determining the software's fair market value. Moreover, I disagree with defendant's argument that Bero's analysis is flawed because he is not permitted to consider "what might have happened if the defendant had a do-over."

When analyzing fair market value based on a hypothetical negotiation, this is exactly what is required: the court considers what would have happened had a willing seller and willing buyer engaged in an ex-ante negotiation covering the unlicensed use.

### 2. Bero's reliance on a "concurrent license" negotiation

Second, defendant takes issue with Bero's damages calculation to the extent it is based on an assumption that plaintiff could have and would have purchased concurrent, rather than device-based, licenses in a hypothetical negotiation. Defendant contends that this opinion is irrelevant because the contract required plaintiff to purchase "device-based" licenses for any computer on which RUO v. 14.0 is used. Accordingly, defendant argues, Bero must calculate damages based on what it would have cost plaintiff to purchase a sufficient number of device-based licenses.

First, I disagree with defendant's premise that the RUO v. 14.0 licensing agreement required plaintiff to purchase device-based licenses. Although the licensing agreement does state that a licensee "must acquire and dedicate a desktop license for each single computer on which the software is used," it also states in the very next paragraph that a licensee "must acquire concurrent licenses for the maximum number of users who will use or access the Software at the same time." Obviously, a licensee is not required to purchase both a device-based license and a concurrent license for the same use. Therefore, these two provisions can only be read as identifying the two types of licenses available and as requiring licensees to purchase one or the other.

6

Moreover, although the fact that plaintiff had purchased "device-based" RUO v. 14.0 licenses in the past at a certain price is relevant to the fair market value of the unlicensed use at issue, it is not conclusive. Those prior agreements may have been appropriate for the type of use negotiated in those cases, but inappropriate for the unlicensed use at issue here. Ascertaining fair market value based on a "hypothetical negotiation" is by definition a speculative endeavor and requires the court to identify the contours of an agreement that never actually occurred. Although past negotiations are relevant to what the parties would have agreed to in this case, the parties are not necessarily bound by those past agreements' terms, particularly when there is good reason for why those other agreements would not fit the particular unauthorized use at issue. Gaylord, 777 F.3d at 1368 (prior licensing agreements between parties are relevant "[b]ut the use of past licenses as evidence must always take account of economically relevant differences between the circumstances of those licenses and the circumstances of the matter in litigation[.]")

### 3. Bero's reliance on "cherry-picked" data

Third, defendant argues that Bero's opinion is unreliable because he relied on "cherry-picked" data. For example, defendant contends that in assuming plaintiff would not have purchased device-based licenses, Bero ignores "numerous contemporaneous documents that show [defendant] was unwilling to sell [plaintiff] concurrent licenses in 2011." Defendant also contends that "in calculating the 2:1 price ratio between concurrent and device prices, Bero disregards evidence that the price ratio of a concurrent license to a device

7

license was typically 5:1."  However, the fact that Bero may have excluded certain data points from his analysis does not render his opinion inadmissible.  "[O]bjections as to whether an expert considered certain factors that the opposing side deems irrelevant generally go to the weight of the expert's opinion, not its admissibility."  Jordan v. Dominick's Finer Foods, 115 F. Supp. 3d 950, 963 (N.D. Ill. 2015) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Bazemore v. Friday, 478 U.S. 385, 400 (1986)).  Defendant is free to attack Bero's failure to consider alternative data points through cross-examination and by presenting its own damages calculations that take into account the data points defendant believes were improperly ignored.

### 4.  Opinion disguised as "legal arguments"

Finally, defendant contends that Bero's criticism defendant's damages calculation is nothing more than inadmissible legal argument.  Although I agree with defendant with respect to some of Bero's criticisms—for example, when he simply states that defendant's damages calculation "does not establish proximate cause"—I believe that other points Bero raised are relevant to the court's inquiry into what would have occurred during a hypothetical negotiation.  For example, Bero notes that plaintiff had a "hard cap" on its Citrix licenses, which effectively limited the total number of concurrent remote users to 2,325.  Bero also points out that although the list price of a device-based license was $305, the "Level D" price, which is what plaintiff paid in the past, was only $118 per device.  These data points are relevant to the price the parties would have agreed to in a hypothetical

8

negotiation, and therefore, they are admissible for the purpose of ascertaining damages.


ORDER

IT IS ORDERED that defendant Attachmate Corporation's motion for leave to file a reply brief, dkt. #143, is GRANTED, and defendant's motion to exclude plaintiff Epic Systems Corporation's damages expert, dkt. #135, is DENIED.

Entered this 8th day of July, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

9