UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

EPIC SYSTEMS CORPORATION,

      Plaintiff,

    v.

ATTACHMATE CORPORATION,

      Defendant.

Case No.:  15-cv-179

---

## ATTACHMATE'S MOTIONS *IN LIMINE* NUMBER ONE (1) TO EXCLUDE HEARSAY STATEMENTS

---

### I.  INTRODUCTION

Epic's theory that Attachmate agreed to sell Epic concurrent licenses for one product (Reflection for the Web) while allowing Epic to use a different more expensive product (Reflection for UNIX and Open-VMS) rests entirely on uncorroborated hearsay statements.  Epic has assumed — wrongly — that such statements are admissible.  They are not.

As the proponent of admitting the statements into evidence, Epic shoulders the burden of proving that they either qualify as non-hearsay under Federal Rule of Evidence 801 or fall within a hearsay exception under Federal Rule of Evidence 803 or Federal Rule of Evidence 804.  Epic cannot carry that burden, and the statements should be excluded from evidence.

### II.  ARGUMENT

Many of the critical facts at issue in this case occurred in March 2011.  To support its version of events, Epic plans to offer an internal Epic e-mail dated March 25, 2011, from Brian Benz to other Epic employees regarding an alleged statement from CDW (a reseller of Attachmate software licenses) about an alleged statement from Attachmate.[1]  Attachmate moves to exclude the first paragraph of the March 25 E-mail — which is part of a longer thread between

---

[1] Epic has identified the March 25 E-mail as Trial Exhibit 86.  It was submitted to the Court earlier as Doc. No. 61-6.

five Epic employees starting on March 18.  That opening paragraph contains three levels of hearsay and reads as follows:

> Just heard from CDW. Attachmate has agreed to give us 200 concurrent users/licenses for the full-client product. We will need to keep an eye on the actual number of concurrent users and make sure we do not exceed that since their software has no ability to do this. They offered this as a courtesy since we purchased so many other full-client licenses.

Ex. A at 1.  This paragraph should be excluded from evidence under Federal Rules of Evidence 801 and 802.

## A.     Epic Bears the Burden of Proving that Hearsay Statements are Admissible

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  A single statement may contain multiple levels of hearsay; to be admissible, each level of hearsay must fall within an exception to the rule against hearsay.  Fed. R. Evid. 805.  ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

Epic bears the burden of proving that any statements (whether documentary or testimonial) it offers into evidence are admissible and that the Rules of Evidence have been satisfied.  *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987) ("when the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence"); *United States v. Shukri*, 207 F.3d 412, 416 (7th Cir. 2000); *Am. Auto. Accessories, Inc. v. Fishman*, 175 F.3d 534, 540 (7th Cir. 1999) (The proponent of the out-of-court statement bears the burden of showing that exception applies).  Where, as here, a document contains multiple level of hearsay, the proponent must establish that each hearsay statement in the chain is admissible, otherwise the evidence must be excluded.  *Jordan v. Binns*, 712 F.3d 1123, 1127 (7th Cir. 2013).

## B.     The March 25 E-mail Contains Three Levels of Hearsay

Here, the March 25 E-mail contains three levels of hearsay:

      i.     the written statements by Mr. Benz constituting the March 25 E-mail itself ("the **Benz Statements**");

      ii.    the purported statements from CDW to Mr. Benz communicating information from Attachmate ("the **CDW Statements**"); and

     iii.   the purported statements from Attachmate to CDW about what Attachmate "agreed" to do ("the **Attachmate Statements**"). *See* Ex. A at 1.

### 1.      The Benz Statements are Hearsay

Offered to show that Attachmate agreed to Epic's concurrent use of Reflection for UNIX and Open-VMS v. 14.0 ("RUO") under concurrent Reflection for the Web ("RWeb") licenses, the Benz Statements are plainly hearsay under Federal Rule of Evidence 801. Moreover, no exceptions apply to the Benz Statements. Mr. Benz is available for trial so Federal Rule of Evidence 804 does not apply. Of the Federal Rule of Evidence 803 exceptions, only Federal Rule of Evidence 803(1) and (5) could potentially apply. But Epic cannot show that either does.

The Present Sense Impression exception found in Federal Rule of Evidence 803(1) does not apply because it requires proof that: (1) the statement describe an event or condition *without calculated narration*; (2) the speaker have personally perceived the event or condition described; and (3) the statement have been made while the speaker was perceiving the event or condition, or *immediately thereafter*. *United States v. Ruiz*, 249 F.3d 643, 646 (7th Cir. 2001). Epic cannot satisfy these requirements. To the extent Mr. Benz was describing a contractual arrangement (i.e. that it was ok to deploy RUO instead of RWeb) the statement is plainly a calculated narration.[2] Moreover, apart from the hearsay statement itself, there is no evidence that Mr. Benz

---

[2] "The calculated narration consideration is based on the rule's requirement that the statement be 'made *while* the declarant was perceiving the event.'" *United States v. Woods*, 301 F.3d 556, 562 (7th Cir. 2002) (quoting Fed.R.Evid. 803(1) (emphasis added)). The exception is based on the theory that it is less likely for a declarant to "deliberate or conscious[ly] misrepresent" the event if there is "substantial contemporaneity" between the statement and the event. *Id.* (citing Fed. R. Evid. 803, Advisory Committee Notes (1972); *United States v. Parker*, 936 F.2d 950, 954 (7th Cir. 1991)). "A declarant who deliberates about what to say or provides statements for a particular reason creates the possibility that the statements are not contemporaneous, and, more likely, are calculated interpretations of events rather than near simultaneous perceptions." *Woods*, 301 F.3d at 562.

wrote the e-mail at the time he was speaking with CDW or immediately thereafter. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.,* 811 F.3d 866, 884 (7th Cir. 2016).

The Recorded Recollection Exception found at Federal Rule of Evidence 803(5) cannot apply because "the party seeking to admit the document must establish (1) that the record concerns a matter about which the witness once had knowledge but now has insufficient recollection to testify fully and accurately, and (2) that the witness made or adopted the record when the matter was fresh in the witness's memory and the record reflects that knowledge correctly." *Collins v. Kibort*, 143 F.3d 331, 338 (7th Cir. 1998) (holding that the trial court erred in allowing plaintiff to rely on his diary while testifying, where Collins did not state that he could not recall the events about which he used his diary to testify and had recalled the events in detail in other testimony).  Here, as in *Collins*, Benz testified about the RWEB/RUO "deal" at issue and therefore cannot meet the requirement that he no longer has sufficient recollection to testify fully and accurately. *See, e.g.,* Doc. No. 44 ("Benz Dep.") at 109:22 — 111:22.  Furthermore, a recorded recollection admitted under Federal Rule of Evidence 803(5) cannot be received as an exhibit unless it is offered by an adverse party. *Id.* ("Even if Collins had satisfied Rule 803(5)'s admissibility requirements, the diary itself may not be received as an exhibit unless it is offered by an adverse party").

### 2.     The CDW Statement is Hearsay

The CDW Statement referred to in the March 25 E-mail — the purported statement from CDW to Epic that Attachmate had agreed to allow Epic to purchase concurrent RWeb licenses but deploy RUO concurrently — is also hearsay to which no exception applies.  CDW is a third party.  Mr. Lieber, to whom Epic attributes this statement, has no memory of making it and it is unlikely he did because he had absolutely no role in negotiating contract terms between Epic and Attachmate.

To the extent Epic argues that the CDW Statement is nonhearsay under Federal Rule of Evidence 801(d)(2)(C) or (D) as an opposing party's statement, Epic cannot carry its burden of proof.  To be nonhearsay under Federal Rule of Evidence 801(d)(2)(D), for example, the rule

requires that the statement be made by an individual who is the party's agent, that the statement be made during the period of the agency, and that the matter be within the subject matter of the agency. *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622 (7th Cir. 2003). Assuming Epic will assert that CDW's sales representative Brian Lieber was the CDW declarant, Epic has not shown that Mr. Lieber had been authorized by Attachmate to make such a statement on behalf of Attachmate or that he was an agent of Attachmate speaking within the scope of his agency. Indeed, the only evidence is that Mr. Lieber (and CDW) had no authority to bind Attachmate to special deals of the sort identified in the March 25 E-mail. Rather, as an employee of a reseller, he only had authority to offer a final license price to Epic based on the quote he received from Attachmate and the margin that CDW wanted to obtain from the sale.

> Q. In Mr. Babai's email to Eric, he indicated, please let Josh know that we have some room to work with on pricing for the upgrades. Do you see that?
>
> A. Yes.
>
> Q. Do you know whether that was typical when you were working with Attachmate and Epic on quotes for Reflection software?
>
> A. Yes, it is very typical that I -- the only thing that I had fluctuation on is pricing, not on licensing programs or licensing rules or stipulations. Simply on the price that I give to the customer based on the quote I receive.
>
> Q. And how did you determine what flexibility or discretion you had with regard to pricing?
>
> A. My decision is based on the price I receive and the amount of profit I feel I could make.
>
> * * *
>
> Q. Okay. There were some questions about your role in the licensing process and I just want to confirm a couple things before we break today. Attachmate has never given you authority to modify or alter the terms of any Attachmate software license agreement; is that correct?
>
> A. That is correct.

> Q. And you have never told Epic or any other CDW customer that you have such authority, correct?
>
> A. Correct.

Doc. No. 76 ("Lieber Dep.") at 44:13-45:6, 84:6-18.

In sum, any purported statement from Mr. Lieber to Mr. Benz regarding the extent of Epic's license rights could not have been made within the scope of Mr. Lieber's authority. Epic has adduced no evidence that Mr. Lieber had authority to speak for Attachmate on any topic. He only had authority to decide what CDW's margin would be and what final license price would be offered to Epic. In addition to having no proof that the CDW Statement is nonhearsay, Epic has no proof that any Federal Rules of Evidence 803 or 804 exception applies to the CDW Statement. Nothing in Mr. Lieber's deposition supports the application of a Federal Rules of Evidence 803 or 804 exception.[3]

### 3.    The Attachmate Statement is Hearsay

Finally, the March 25 E-mail contains an implied statement that Attachmate told CDW that Epic had permission to purchase concurrent RWeb licenses but deploy RUO concurrently. This Attachmate Statement is also hearsay because it is being offered for the truth of the matter asserted.

Epic may argue that the Attachmate Statement is nonhearsay under Federal Rule of Evidence 801(d)(2), but that argument is unfounded. Attachmate has never adopted the position that a customer could purchase RWeb licenses but deploy RUO so 801(d)(2)(B) does not apply. And there is no evidence that Mr. Babai was authorized to specially alter the terms of Attachmate's software license agreements. Indeed every piece of evidence supports the contrary position, that any contract alterations had to be approved by the legal department.

---

[3] Epic may argue that the CDW Statement should fall within the Federal Rule of Evidence 807 residual exception. But "[t]he Seventh Circuit has directed the courts to narrowly construe the residual exception." *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 631 (7th Cir. 2006) *overruled by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). "Congressional commentary on the exception indicates that courts should define these conditions narrowly so that they do not use the exception as a way of dramatically revising the hearsay rule." *United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir. 1996).

Not surprisingly, Mr. Lieber has no memory of discussing an alteration to a contract term with Epic or Attachmate.  And Mr. Babai — who has not worked for Attachmate for over two years — testified that he never made any statement to Mr. Lieber or Epic about altering the scope of Attachmate's software license agreements and that he had no authority to change license terms in any event.  There is simply no evidence supporting a Federal Rule of Evidence 801(d)(2) argument or the application of any hearsay exception.

## C.   Any Testimony Mr. Benz Offers at Trial About the CDW Statement or Attachmate Statement Should be Excluded

Even if the March 25 E-mail is excluded, Epic will seek to introduce the CDW Statement and the Attachmate Statement at trial through the testimony of Mr. Benz.  In essence, Mr. Benz will testify that CDW told him that Attachmate told CDW that it had agreed to let Epic purchase concurrent RWeb licenses but deploy RUO concurrently in its place.  While eliminating one level of hearsay — because Mr. Benz will be testifying at trial — this anticipated testimony will not eliminate the second and third levels of hearsay mentioned above.  Thus, it must be excluded for the same reasons that the March 25 E-mail.

## III.   CONCLUSION

Epic wants to put words in Attachmate's mouth through an alleged conversation between Epic and CDW.  It will seek to do that through an internal Epic e-mail that contains multiple levels of hearsay and through the trial testimony of Brian Benz that also contains multiple levels of hearsay.  There is no evidence that CDW — or Brian Lieber — had authority to speak for Attachmate regarding the scope of any alleged software license with customers.  No testimony by CDW, Attachmate or Epic says otherwise and no document exchanged between Epic, CDW and Attachmate supports Mr. Benz's hearsay-laden version of events.  The March 25 E-mail should be excluded from evidence and Mr. Benz should be prohibited from testifying regarding alleged hearsay statements from CDW and Attachmate.

DATED this 8th day of July, 2015.

STOKES LAWRENCE, P.S.

By: /s/   *Bradford J. Axel*
Bradford J. Axel, admitted *pro hac vice*
Theresa H. Wang, admitted *pro hac vice*
Shannon M. Jost, admitted *pro hac vice*
1420 Fifth Avenue, Suite 3000
Seattle, WA 98101-2393
Phone: (206) 626-6000
Fax: (206) 464-1496
*theresa.wang@stokeslaw.com*
*brad.axel@stokeslaw.com*
*shannon.jost@stokeslaw.com*

Aaron T. Olejniczak (1034997)
ANDRUS INTELLECTUAL PROPERTY
LAW, LLP
100 East Wisconsin Avenue, Suite 1100
Milwaukee, WI 53202
Phone: (414) 271-7590
Fax: (414) 271-5770
*aarono@andruslaw.com*

Attorneys for Attachmate Corporation